UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DALE EDWARD MICHAEL, et al., | ) | CASE NO. 1:07CV3818 |
| Plaintiffs, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) ) | |
| PAUL THOMPSON, et al., | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) ) ) | [Resolving Doc. 104] |

This matter comes before the Court on Intervenors' Motion to Dismiss (Doc. 104). Plaintiffs have filed their Opposition to the Motion (Doc. 109), as have Defendants (Doc. 108). The Court has been advised, having considered the complaint; the motion, the oppositions, and applicable law. For the reasons that follow, Intervenors' Motion is DENIED.

**I.    STATEMENT OF FACTS**

The factual history of this action was set forth in detail in this Court's order granting a preliminary injunction. (Doc. 105). For clarity, set forth below are only those facts necessary for the decision of the instant Motion to Dismiss ("Motion"). Plaintiffs are members of the United Transportation Union ("UTU"), a labor organization governed by the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411 *et seq.*, under which Plaintiffs contend the Court has jurisdiction in this action. Through this litigation, Plaintiffs have sought to stop a merger between the UTU and the Sheet Metal Workers International Association ("SMWIA"). If that merger were completed, the resulting entity would become known as the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART").

The above referenced merger was brought about by the following facts. During the fall

of 2007, the UTU, under the leadership of then-President Paul Thompson, attempted a merger with the SMWIA. A merger agreement was drafted and submitted to the membership for a ratification vote. The merger agreement as presented was approved by a majority of the members casting a vote.

Following the initial approval of the merger, the UTU proceeded with its normal annual convention. During this convention, numerous officers were elected. At that time, the merger agreement specified that these positions would change in name following the merger, but that the elected officials for the most part would remain elected officials.

Just after the merger vote was concluded, several members of the UTU filed this suit challenging the merger on the basis that the vote was improperly conducted and members had not been given a copy of the proposed constitution governing the merged union in violation of the terms of the merger agreement. Plaintiffs sought injunctive relief to block the merger, which was scheduled to be consummated on January 1, 2008. The Court granted the plaintiffs' motion for a temporary restraining order, and on June 26, 2008 granted their motion for a preliminary injunction.

On June 18, 2008, Intervenors James Brunkenhoefer, Roy Boling, C.A. Iannone, J.R. Cumby, John Babler, J.D. Fitzgerald, and Victor Baffoni filed the instant motion to dismiss. In their motion, Intervenors claim that any action by this Court would have the effect of "undoing" a completed election. The Court now reviews the merits of that argument.

## II.     LEGAL STANDARD

The Sixth Circuit has recognized that there are generally two types of challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1): facial challenges and factual challenges. *Gentek Bldg. Prods., Inc., v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir.

2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence[.]" *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

### III. ANALYSIS

In their motion, Intervenors rely heavily on *Davis v. United Auto. Workers of Am.*, 390 F.3d 908 (6th Cir. 2004). The Court agrees that *Davis* is instructive on the issue presented herein. In *Davis*, the Circuit explained this Court's jurisdiction in cases invoking the LMRDA as follows.

> In enacting the LMRDA, Congress sought to provide "a comprehensive scheme for the regulation of union elections." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531-32, (1972) (finding that the LMRDA is Congress's "exclusive post-election remedy" for labor union election disputes). Where a union election has already been conducted, Title IV of the LMRDA mandates that postelection challenges may be brought only by the Secretary of Labor. 29 U.S.C. § 483 ("The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."); *see also Trbovich*, 404 U.S. at 531, 536 (stating that the LMRDA "prohibits union members from initiating a private suit to set aside an election" because "Congress intended to prevent members from pressing claims not thought meritorious by the Secretary").
>
> A union member who wishes to challenge the results of an election under the LMRDA must therefore file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a). If the Secretary finds probable cause to believe that a violation of the LMRDA has occurred, the Secretary may file suit in federal district court. 29 U.S.C. § 482(b); *see Calhoon v. Harvey*, 379 U.S. 134, 140 (1964). Although a disgruntled union member may intervene in a suit for postelection relief, the district court does not have jurisdiction to adjudicate the claims of the private parties unless the Secretary of Labor has instigated the action. 29 U.S.C. § 483; *see Trbovich*, 404 U.S. at 536-37.

3

*Davis*, 390 F.3d at 911; *see also Local No. 82 v. Crowley,* 467 U.S. 526, 541 (1984) (holding that "the exclusivity provision included in § 403 of Title IV plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed"). Intervenors contend that the above standard requires dismissal of the pending suit. This Court disagrees.

In *Davis*, the Court focused upon the relief sought by the Plaintiff rather than the pedantic argument that the complaint invoked Title I.

> Because "the substance of the claim is controlling," we must treat Davis's complaint as arising under Title IV of the LMRDA. *McGuire v. Grand Int'l Div. of the Bhd. of Locomotive Eng'rs*, 426 F.2d 504, 508 (6th Cir.1970) ("If an individual member could bring suit by the simple expedient of framing a claim under Title I, where the substance of the claim falls under Title IV, [t]he comprehensive administrative and procedural provisions of Title IV would be rendered meaningless.").

*Davis*, 390 F.3d at 912. Accordingly, this Court conducts a similar analysis.

In reviewing the substance of Plaintiffs' claim, the Court finds that the matter was properly brought under Title I. Contrary to Intervenors' contentions, Plaintiffs do not seek to invalidate a completed election. Furthermore, Intervenors' arguments now stand in stark contrast to the factual record developed in this matter.

Initially, the Court notes that Intervenors' argument hinges upon a finding that the UTU's 2007 election served to elect SMART officers. That election decidedly did not elect SMART officers. Rather, the creation of any positions within SMART was governed by the Merger Agreement. In that respect, the Merger Agreement provides as follows:

> SMART shall have a General President and a General Secretary-Treasurer. It shall have 17 General Vice-Presidents of whom 6 *will come from* UTU including its International President, Assistant President, General Secretary and Treasurer, National Legislative Director and the two (2) senior Vice Presidents elected at the 2007 UTU Conventions. …

> All full time UTU Vice Presidents elected at the 2007 Convention *will become* International Representatives and Organizers of SMART with functions of current UTU officers. …
>
> If any of the original incumbents in these positions resigns, retires or dies before completing the term of office, the vacancy shall be filled from among the other officers elected at the final UTU convention in 2007, in accordance with the UTU Constitution.

Doc. 6-16 at 5-6 (emphasis added).  By its nature, the Merger Agreement is forward looking.  It anticipates that UTU elected officials will have their titles changed upon the effective date of the Merger.  Prior to that effective date, the Merger Agreement had no legal effect.  Consequently, the 2007 UTU elections could not have been used to elect SMART officers.

Beyond this legal conclusion, the Court is compelled by the record to conclude that the 2007 UTU election served only to elect UTU officials.  In candidate literature, Intervenors routinely referred to the sought-after positions as positions within the UTU.  Babler indicated that he was a "candidate for the position of International President, United Transportation Union."  Doc. 109-2 at 2.  Brunkenhoefer indicated that he was running for "reelection in the [position he then held]."  *Id.* at 4.  This would indeed be a strange statement to make if he were running for a position that had previously never existed.  Baffoni announced that he was a "candidate for the office of Vice-President, Director of the Bus Department, of the United Transportation Union."  *Id.* at 5.  Fitzgerald asserted that he was seeking a "position as an International Vice President for the United Transportation Union[.]"  *Id.* at 6.  Like Brunkenhoefer, Iannone sought reelection to his UTU position.  *Id.* at 7.  Finally, Boling indicated that he was seeking support for his "re-election to [his] present position of Vice President."  *Id.* at 8.  Absent from these candidacy materials is any mention of SMART.

Despite the above facts, Intervenors appear to have taken the position that the Merger Agreement actually served to modify the 2007 election, causing the election of SMART officers.

5

As noted above, however, the Merger Agreement was not legally effective at the time the election took place. Consequently, it could not have altered the election. Moreover, the mere fact that the new UTU officers were scheduled to take office on the same day the merger was to become effective[1] does not serve to somehow modify the election. Were the Court to accept Intervenors' argument, the UTU would have no current officers because no elections for the *existing* positions would have taken place. Rather, only elections for positions that had not yet legally been created would have occurred. In the face of the facts detailed above, the Court is not inclined to adopt such a position.

Due to this Court's intervention, SMART has never been created and therefore it has never had officers. However, the Court's injunction has not served to alter in any manner the 2007 election. Each elected official has maintained the UTU office for which he expressly campaigned and to which he was elected. Consequently, the substance of the claim raised by Plaintiffs does not resemble a Title IV claim. There is nothing in the relief sought that would invalidate a completed election. Rather, the relief sought served only to stop a *future* change, i.e., it halted the process of elected UTU officers becoming SMART officers. Furthermore, that action, the change from a UTU officer to a SMART officer, was compelled not by an electoral vote, but by the Merger Agreement. The Court, therefore, finds it has subject matter jurisdiction. *See Local No. 82*, 467 U.S. at 541, n.16 ("The exclusivity provision of Title IV may not bar postelection relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted.")

Finally, the Court is compelled to identify the inconsistent positions taken by Intervenors in this action. In response to the motion to intervene, the Court held a hearing to establish the

---

[1] This comes as little surprise given the chosen effective date of the merger was January 1.

6

interests of the Intervenors. Each Intervenor testified that he was a current officer in the UTU. In the motion to intervene, Intervenors stated as follows: "These seven Proposed Intervenors constitute a majority of the UTU's eleven member Board of Directors." Doc. 52-2 at 2. In contrast, in the instant motion to dismiss, Intervenors contend that they were never elected to UTU positions, but rather only to SMART positions. Accepting such an argument as true would greatly diminish the standing of Intervenors in this action.

Effectively, Intervenors seeks to have their cake and eat it too. They sought intervention contending that as the elected UTU Board they had a duty to fulfill the wishes of the electorate. Once successfully involved in the case, they now seek to argue that they were never really elected to the UTU Board. While these inconsistencies played no role in the Court's decision, they are troubling.

## IV. CONCLUSION

The substance of the Plaintiffs' claim does not seek to invalidate a completed election. The Court, therefore, has jurisdiction to hear the matter. Intervenors' motion to dismiss (Doc. 104) is DENIED.

IT IS SO ORDERED.


Date:   October 15, 2008          */s/ John R. Adams*
                                  Judge John R. Adams
                                  UNITED STATES DISTRICT COURT